

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00224-CR

_____

BARBARA HOLZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Marion County, Texas
Trial Court No. F13916

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

"Love is born lots of different places and it's not always clean." This is the statement septuagenarian Barbara Holz expressed to the jury that convicted her of criminal mischief for damage to, or destruction of, a house owned by the United States of America. Eighty-six dogs, many of which were allowed to live, defecate, and urinate in the house for months, were recovered from the property. Holz was sentenced to two years' confinement, ordered to pay $17,000.00 in restitution, and placed on community supervision. On appeal, she asserts the legal and factual insufficiency of the evidence, error in the denial of her motion to quash the indictment, a material variance between the indictment and the evidence, and error in the failure to charge the jury on the defense of necessity.

We affirm because (1) legally and factually sufficient evidence supports the jury's finding that Holz intentionally or knowingly damaged or destroyed the property of another, (2) legally and factually sufficient evidence supports the jury's finding of the owner of the property, (3) legally and factually sufficient evidence supports the jury's finding that Holz caused damage or destruction of property with a pecuniary loss of more than $20,000.00, (4) the trial court did not err in overruling Holz's motion to quash the indictment, (5) no fatal variance existed between the indictment and the proof, and (6) no jury charge on the defense of necessity was required.

*(1)      Legally and Factually Sufficient Evidence Supports the Jury's Finding that Holz Intentionally or Knowingly Damaged or Destroyed the Property of Another*

Holz argues that the evidence was insufficient in three ways: (A) she did not intend to destroy the property of another since "she acted in good faith under a reasonable claim of right regarding her use of the property"; (B) "U.S.D.A. Rural Development" was not the owner of the property as alleged in the indictment; and (C) the evidence was not sufficient to prove pecuniary loss in excess of $20,000.00. We address the mental-state sufficiency issue in this section and the other sufficiency issues in later sections.

The requirement of legal sufficiency of the evidence serves as an aid in determining whether submission of an issue is required. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In other words, if the evidence in this case was insufficient to raise an issue on Holz's guilt, it should not have been submitted for the jury's decision, and we must render a judgment of acquittal. *Id.* When conducting this analysis, we review all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational jury could find the essential elements of criminal mischief beyond a reasonable doubt. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Roberts v. State*, 273 S.W.3d 322 (Tex. Crim. App. 2008); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33.

Once we determine the evidence raised issues for the jury's resolution, we will not sit as the thirteenth juror re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235

3

S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

On the other hand, in judging factual sufficiency, we are not free to re-weigh the evidence and set aside the jury verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. We do not engage in a second evaluation of the evidence, but ensure only that the jury reached a rational decision. *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)). Thus, we give due deference to the jury determinations and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135. Unlike our legal sufficiency review, we examine the evidence in a neutral light when assessing factual sufficiency and determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Laster*, 275 S.W.3d at 518; *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts*, 220 S.W.3d at 327; *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex.

4

App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is manifestly unjust, shocks the conscience or clearly demonstrates bias. *Sells v. State*, 121 S.W.3d 748, 754 (Tex. Crim. App. 2003); *Santellan v. State*, 939 S.W.2d 155,164 (Tex. Crim. App. 1997).

We measure the evidence "by the elements of the offense as defined by the hypothetically-correct jury charge for the case."[1] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically-correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 281.

To promote economic development, the United States Department of Agriculture (USDA) provides loans to low-income families to assist them in purchasing or building houses in rural areas. Holz applied for such a loan to purchase a residence in Marion County at a cost of $35,000.00. In April 2005, she contracted to purchase the residence in question with Joe B. Jones, an agent and area specialist for the USDA. The contract was contingent on USDA's approval of the credit sale. Holz's $100.00 earnest money check bounced for lack of sufficient funds. This prompted USDA's requests to Holz to re-verify her income. Holz never complied. As a consequence, the loan was never approved and the property sale was never closed. After the contract for sale was cancelled, Holz

---

[1]*Malik* controls "even in the absence of alleged jury charge error." *Gollihar v. State*, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001).

5

picked up the title company's file containing documentation to that effect. The cancellation of the sales contract did not stop Holz. She moved into the residence and lived there at no cost for over three years, collecting and housing dogs.

Fourteen of Holz's Australian shepherds and blue heeler dogs moved into the new residence with her. Because Holz loved animals, she took in a large number of strays and "boxes of puppies" people abandoned close to the house. Neighbor Don Adams began to notice "more and more dogs and more and more litter on the yard." Adams, who lived a block and a half away from Holz, found dog carcasses on his property and throughout the neighborhood. He recounted that "a lot of the puppies that were running free were run over by cars." Adams testified that the smell emanating from the property was like that of a meat packing plant and affected the whole neighborhood. After some time, he contacted Caroline Wedding of the Marion County Humane Society.

Wedding observed approximately forty-five dogs outside the house on the property occupied by Holz, some of these dogs contained in pens Holz had built with 560 feet of chain link fence. Holz claimed that, inside the house, there were eight dogs that should be euthanized, but denied entry to Wedding, who reported her observations to the sheriff's department. Shortly thereafter, Society for the Prevention of Cruelty to Animals investigator Christopher West met with Holz and was also denied access into the house. This time, Holz claimed there were only four dogs inside. A warrant authorizing seizure of the dogs was obtained.

The following day, hoping to avoid confrontation during seizure of the animals, Investigator Shawn Cox, accompanied by West and Wedding, executed an outstanding, unrelated warrant for Holz's arrest. The seizure of the dogs was recorded on video and later played back for the jury. West's testimony punctuated the video, depicting the utterly deplorable condition of the house caused by animals living in vile conditions. West carried an ammonia warning meter that determined whether dangerous levels of ammonia given off by urine existed in the environment. He clarified that any reading above twelve parts per million is hazardous to human health, that a person can work only eight hours in an environment with an ammonia level above twenty-five parts per million, and that if the meter reads fifty parts per million, no more than five minutes should be spent in the environment. The video and testimony demonstrated that West's ammonia meter read sixteen parts per million while located on the front porch before West's entry into the house. The meter jumped to ninety-nine when the front door was opened. "We had max'd our meter out. It does not go any higher than that." West recounted:

> On my initial entry into the home I lasted about fifteen to twenty seconds before I had to leave due to the ammonia smell and fecal smell inside the home. There were about 30 dogs, 30 to 32 dogs running loose, nipping at my heels, free roaming inside the home. There was compressed feces basically from wall to wall. I could not see the floor, it was all feces. In all of the rooms I did not see any furniture with the exception of a TV set that I remember in the home and the dogs were just free roaming. The smell was incredible. The dogs were running back and forth, hard to get my footing because of all the feces.

West noticed a lot of damage to the walls and floor, and a hole beneath the slab that "[m]ultiple dogs were climbing into." Thirty-five to thirty-nine dogs were recovered from inside the house. The video shown to the jury confirmed the horrific conditions and profound damage to the house.

Despite her prior background managing residential real estate sales, and knowledge that "[w]e had to show up at the closing," Holz testified that she believed she owned the property because her real estate agent gave her the key. To this effect, Holz testified that she made repairs to the house as if it were hers, put her name on the mailbox, received mail, and had telephone and water service. Thus, she argues, she believed the damage being done to the house was damage to her own property.

Meanwhile, Jones was not aware that anyone was occupying the property. He testified that, after discovery of the situation at the house, he was required to go to an "environmental type specialty firm" to receive cleanup estimates due to the hazardous environment. The trial court sustained Holz's hearsay objection to the estimates, and they were never admitted. Based on Jones' experience in estimating the value of property, however, he considered the property to be a total loss and would probably condemn it and haul it off.

Attorney Chase Palmer testified that, on an earlier occasion, Holz had left his client's rental property in a deplorable condition by allowing dogs to live there. He described the "terrible smell emanating from the house" and told the jury that the earlier house was eventually bulldozed.

A person commits criminal mischief if he or she, without the effective consent of the owner, intentionally or knowingly damages or destroys the tangible property of the owner. TEX. PENAL CODE ANN. § 28.03 (Vernon Supp. 2008). Also, since the value of pecuniary loss determines the grade of the offense, it is a crucial additional element of criminal mischief. TEX. PENAL CODE ANN. § 28.03(b); *see Lackey v. State*, No. 06-08-00162-CR, 2009 WL 1884421, at *5, 8 (Tex. App.—Texarkana July 2, 2009, pet. filed) (citing *Elomary v. State*, 796 S.W.2d 191, 192–93 (Tex. Crim. App. 1990); *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App.—Houston [1st Dist.] 2007, pet. struck)).

Holz contends that because she operated under the belief that the property was hers, she did not intend to damage or destroy another's property.[2] Holz's belief as to ownership of property does not affect the analysis of the mens rea element. A person acts intentionally "when it is his conscious objective or desire to engage in the conduct that caused the result." TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003). A person acts knowingly "with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PENAL CODE ANN. § 6.03(b) (Vernon 2003). The conduct at issue is Holz's housing of the dogs within the house where they defecated, urinated, created holes in the wall, and otherwise destroyed the house. The result of Holz's conduct was damage or destruction of the property. She testified on direct examination that she

---

[2]Holz argues her belief that she had a right to possess the property was reasonable because the contract for sale stating, "The purchaser will close with the property vacant; subject to the Purchaser's own occupancy only," entitled her to immediately move in. She ignores the language making the contract for sale contingent upon agency approval of the credit sale.

9

realized the dogs were doing some damage to the carpeting and floors. A review of the evidence demonstrates it was legally and factually sufficient for a jury to at least find Holz was reasonably certain that housing over thirty dogs inside the house, and allowing them to roam free, defecate, urinate, and create holes in the walls, would cause damage or destruction of the property.

*(2)*      *Legally and Factually Sufficient Evidence Supports the Jury's Finding of the Owner of the Property*

Holz complains that the evidence was insufficient to demonstrate "Joe B. Jones, agent for the U.S.D.A. Rural Development" was the owner of the property because title was in the name of the United States of America. She also contends Rural Development is "a collection of programs" that cannot be an owner as a matter of law.

An owner, as defined in the Texas Penal Code, is a person who "has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor." TEX. PENAL CODE ANN. § 1.07(35)(A) (Vernon Supp. 2008). Ownership may be alleged through the actual owner or a special owner. TEX. CODE CRIM. PROC. ANN. art 21.08 (Vernon 2009). A special owner is an individual in custody or control of property belonging to another person. *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a government entity is the owner of property subject to criminal mischief, it is the preferable practice to allege special ownership in a natural person acting for the entity. *Id.*; *State v. Bartee*, 894 S.W.2d 34, 44 (Tex. App.—San Antonio 1994, no pet.) (citing *Sowders v. State*, 693 S.W.2d 448, 451 (Tex. Crim. App. 1985)).

10

In this case, the indictment alleges that Jones was the owner of the property. The deed offered by Holz's counsel at trial names him as the substitute trustee for the property which was "struck off to United States of America, Rural Housing Service." The deed lists Jones' office address as the address of the owner. A tax receipt demonstrates taxes were paid by owners the United States of America/Rural Housing Services, and also listed Jones' work address as the address for the property owner. The sales contract signed by Holz was executed by "The United States of America, acting through the Rural Housing Service," and was signed by Jones as the "Rural Development Specialist" for USDA. Additionally, Jones testified that as agent for USDA, he is authorized to execute documents relating to the residence on behalf of the United States of America.

On the other hand, the jury heard that Holz never closed on the purchase of the house, bounced the escrow check, did not have a deed to the property, never made a payment on the house, did not pay property taxes or insurance, and did not inform Jones she was living in the house. Holz's testimony regarding her belief in ownership merely raised an issue of ownership for the jury to resolve. We find this evidence was both legally and factually sufficient to enable the jury to find that Jones had title as a representative and had a greater right to possession of the property than Holz.[3]

---

[3]Holz complains that the evidence was insufficient to show "USDA, Rural Development," had title to the property. Because we determine Jones was alleged to be the special owner, and because legal and factual sufficiency are evaluated based on the hypothetically correct jury charge, we need not assess this contention. We do, however, analyze whether the trial court should have quashed the indictment or whether a material variance existed between the indictment and proof.

*(3)* *Legally and Factually Sufficient Evidence Supports the Jury's Finding that Holz Caused Damage or Destruction of Property with a Pecuniary Loss of More than $20,000.00*

Next, we address Holz's point of error questioning whether the evidence was sufficient to establish "damages."[4] The pecuniary loss resulting from the criminal mischief determines the grade of the offense. TEX. PENAL CODE ANN. § 28.03(b); *see Lackey*, 2009 WL 1884421, at *8. Thus, criminal mischief also includes, as a crucial element, the value of pecuniary loss. *Id.* at *5 (citing *Elomary*, 796 S.W.2d at 192–93; *Barnes*, 248 S.W.3d at 220). If property is damaged, pecuniary loss is determined by the cost of repairing or restoring the damaged property within a reasonable time. TEX. PENAL CODE ANN. § 28.06(b) (Vernon 2003). If property is destroyed, the amount of pecuniary loss is either the fair market value of the property at the time and place of destruction, or, if fair market value cannot be ascertained, the cost of replacing the property within a reasonable time after destruction. TEX. PENAL CODE ANN. § 28.06(a) (Vernon 2003). A pecuniary loss of more than $20,000.00 but less than $100,000.00 supports conviction of the offense as a third-degree state jail felony. TEX. PENAL CODE ANN. § 28.03(b)(5).

Holz contends that there is no competent evidence to demonstrate the property was destroyed. We disagree. Because the term "destroy" is not statutorily defined in the Texas Penal Code, the term's meaning is determined by its common usage. TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005); *Cullen v. State*, 832 S.W.2d 788, 796–97 (Tex. App.—Austin 1992, pet. ref'd). "Destruction"

---

[4]Damages "is not the issue here; the statutory measure is the 'amount of pecuniary loss' as defined by Section 28.06 of the Texas Penal Code." *Lackey*, 2009 WL 1884421, at *5.

means "1. The act of destroying or demolishing; the ruining of something.  2. Harm that substantially detracts from the value of property."  BLACK'S LAW DICTIONARY 513 (9th ed. 2009).  The term "destroy" can refer to total or partial destruction.  *Cullen*, 832 S.W.2d at 796–97.[5]  Jones testified that the property was an environmental hazard which he considered a total loss.  He stated that he would probably condemn it and haul it off.  The jury heard that another house Holz left in a deplorable condition also had been bulldozed as a result.  When reviewing the evidence in a light most favorable to the verdict, we conclude the jury had legally sufficient evidence to determine the residence was ruined, or that the harm done to the house substantially detracted from its value.

Holz claimed that the house was merely damaged, that it was structurally sound, and that she could clean it up.  The house was a concrete slab house, and her plan was to clean the feces from the floor and sand it.  She testified the repair work would cost less than $500.00.  Even when viewing this evidence in a neutral light, we cannot conclude that a finding of destruction was so obviously weak as to undermine confidence in the verdict, or, if taken alone, was greatly outweighed by contrary proof so as to be clearly wrong and unjust.[6]

_____

[5]Definitions of the word "destroy" listed in *Cullen* include "to reduce (an object) to useless fragments, a useless form, or remains, as by rending, burning, or dissolving; injure beyond repair or renewal" and "to ruin completely, spoil so that restoration is impossible."  832 S.W.2d 796 at n.2.

[6]We agree with Holz's contention that expert testimony or testimony from a person with personal knowledge is required to establish cost of repair, and that a mere estimate, without more, is not sufficient to establish cost of repair.  *See generally Elomary*, 796 S.W.2d at 192–93; *Deas v. State*, 752 S.W.2d 573, 576 (Tex. Crim. App. 1988); *English v. State*, 171 S.W.3d 625, 629 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Sebree v. State*, 695 S.W.2d 303, 305 (Tex. App.—Houston [1st Dist.] 1985, no pet.).  However, since there is sufficient evidence to prove the

We next address whether the evidence was sufficient to establish pecuniary loss in an amount greater than $20,000.00. "[W]hen the State seeks to establish the value of an item of property through the testimony of a non-owner[,] the witness must first be qualified as having personal knowledge of the value of the property." *Sullivan v. State*, 701 S.W.2d 905, 908 (Tex. Crim. App. 1986). Yet, "[i]t has long been the rule in this State that the owner of property is competent to testify" as to the fair market value of his own property. *Id.* Because such testimony is an offer of the owner's best knowledge of the value of his property, it "constitutes legally sufficient evidence for a trier of fact to make a determination as to the value based on the witness's credibility." *Jones v. State*, 814 S.W.2d 801, 803 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (citing *Sullivan*, 701 S.W.2d at 909).

Fair market value is the amount of money that the property would sell for given a reasonable time for selling it. *Keeton v. State*, 803 S.W.2d 304, 305 (Tex. Crim. App. 1991). Jones stated the sales price of the house, at least the amount Holz was previously willing to pay for the house, was $35,100.00. A Marion County tax receipt outlining all of the taxes paid on the property in November 2007 valued the house at $48,250.00.[7] By law, all Texas taxing authorities are required to appraise all taxable property at fair market value. TEX. TAX CODE ANN. § 23.01 (Vernon 2008). We find the evidence was sufficient for the jury to conclude that Jones suffered over $20,000.00 in pecuniary

property was destroyed, and pecuniary loss is measured by fair market value, rather than cost of repair, Holz's arguments and cited caselaw are inapplicable.

[7]The tax receipt valued the land separately at $1,000.00.

14

loss.  Further, in order to challenge the fair market value presented by Jones, Holz was required to offer controverting evidence of the value of the property, not her own estimates of damage repair. *Id.*  She did not present any evidence contradicting the fair market value as established by Jones' testimony and the Marion County taxing authority.   Thus, we find the evidence was legally and factually sufficient for the jury to determine the amount of pecuniary loss exceeded $20,000.00.  This point of error is overruled.

*(4)      The Trial Court Did Not Err in Overruling Holz's Motion to Quash the Indictment*

Holz also argues on appeal that the trial court should have quashed the indictment because the manner and means of committing the alleged offense was not set out in sufficient detail.  We review de novo a trial court's denial of a motion to quash.  *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007), *cert. denied,* __U.S.__, 128 S.Ct. 2056 (2008).  The indictment in this case alleged

> that Barbara Holz, on or about the 10th day of July, 2008, . . . did then and there intentionally or knowingly damage or destroy tangible property, to wit:  a house by allowing numerous dogs to remain in said house, without the effective consent of Joe B. Jones, agent for the U.S.D.A. Rural Development, the owner of said property, causing pecuniary loss of $20,000 or more but less than $100,000 to said owner.

Holz's motion to quash complained the indictment "fails to specify by what manner or means Defendant did damage or destroy tangible property of the complainant and therefore fails to give defendant sufficient notice, or precise notice of the manner and means she did damage or destroy" the property.

15

One statutory manner of committing the offense of criminal mischief is by intentionally or knowingly damaging or destroying tangible property of the owner. TEX PENAL CODE ANN. § 28.03(a)(1). This is the gravamen of the offense, which was properly alleged. A charging instrument which tracks the language of a criminal statute possesses sufficient specificity to provide a defendant with notice of a charged offense in most circumstances. *State v. Edmond*, 933 S.W.2d 120, 128 (Tex. Crim. App. 1996) (citing *Bynum v. State*, 767 S.W.2d 769, 778 (Tex. Crim. App. 1989); *DeVaughn v. State*, 749 S.W.2d 62, 67 (Tex. Crim. App. 1988)). The indictment must state facts which, if proved, show a violation of the law; the indictment must be dismissed if such facts would not constitute a criminal offense. *Posey v. State*, 545 S.W.2d 162, 163 (Tex. Crim. App. 1977).

Here, the indictment alleges facts—that Holz intentionally or knowingly damaged or destroyed tangible property of the owner—constituting a particular statutory manner or means of committing the offense of criminal mischief. "[W]hen a statute defines the manner or means of committing an offense, an indictment based upon that statute need not allege anything beyond that definition." *Edmond*, 933 S.W.2d at 130.

In this instance, the indictment went further than the mere statutory language and alleged the damage or destruction occurred when Holz allowed dogs to remain in the house. That further description does not invalidate the previous allegation of a specific statutory manner or means of

committing the offense or make the indictment more vague or indefinite. The indictment gave Holz ample notice of the manner and means of accomplishing the offense of criminal mischief.

Holz's motion to quash also claimed the indictment failed "to give defendant sufficient notice of the owner of the property." The motion to quash listed Jones as the owner of the property. This was sufficient notice to Holz. In her brief, while Holz "acknowledges that generally an allegation of a person as the owner is sufficient to give an accused sufficient notice, . . . the owner was alleged to be an agent for the U.S.D.A. Rural Development, an abbreviated name that should not be sufficient to withstand a motion to quash." As the argument relating to the abbreviation was not included in the motion to quash, we decline to address it.

Also, the motion to quash stated that "the defendant shows that her attorney has researched the indices for real property records . . . and finds neither a record of ownership in Joe B. Jones or U.S.D.A. Rural Development." This statement to the merits of the case in the motion to quash did not address the sufficiency of notice of the owner, and would not serve as a basis to quash the indictment. The trial court did not err in overruling Holz's motion to quash the indictment.

*(5)      No Fatal Variance Existed Between the Indictment and the Proof*

Holz also claims there was a fatal variance between the property owner alleged in the indictment and the owner proved at trial. She notes that the actual name of the owner of the property was the United States of America. However, as previously explained, the indictment states that Jones is special owner of the property, an undisputed fact. Holz does not contend that Jones was

17

without greater right of possession, and does not describe how the alleged variance prejudiced her substantial rights. We have also already determined that the indictment sufficiently informed Holz of the offense such that she could prepare an adequate defense.

"[A] hypothetically correct charge need not incorporate allegations that give rise to immaterial variances." *Gollihar*, 46 S.W.3d at 256. When faced with a sufficiency of the evidence claim based on a variance between the indictment and proof, only a material variance, i.e., one that prejudices the defendant's substantial rights, will render the evidence insufficient. *Id.* at 257. When reviewing such a variance, we determine whether the indictment informed the defendant of the charge against him or her sufficiently to allow preparation of a defense, and whether the State under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *Id.*

The Fifth Amendment to the United States Constitution, and Article I, Section 14, of the Texas Constitution, prohibit double jeopardy and protect individuals from being tried twice for the same offense, possibly receiving double punishments. *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens v. State*, 806 S.W.2d 812, 814–15 (Tex. Crim. App. 1990). In the event of a subsequent prosecution, the entire record, not just the indictment is reviewed to ensure protection from double jeopardy. *Gollihar*, 46 S.W.3d at 258. Since the home address, deeds, tax record, contract for sale, and testimony regarding the actual owner of the property could be used in any subsequent prosecution, a conviction under the indictment in this case would

18

bar prosecution of criminal mischief for damage to this house specially owned by Jones, regardless of the owner's name alleged in the indictment. *See In re J.M.R.*, 149 S.W.3d 289, 295 (Tex. App.—Austin 2004, no pet.). Thus, there was no material variance between the indictment and proof, and this point of error is overruled.

*(6)     No Jury Charge on the Defense of Necessity Was Required*

Where a defensive issue is raised by the evidence, a defendant is entitled to an affirmative instruction in the jury charge, regardless of the strength, weakness, or credibility of the evidence. *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996). This is a matter of law, which we review de novo. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The defense of necessity would be available to Holz if the evidence demonstrated:  (A)  she reasonably believed her conduct was immediately necessary to avoid imminent harm; (B) the desirability and urgency of avoiding the harm clearly outweighed, according to ordinary standards of reasonableness, the harm sought to be prevented; and (C) no legislative purpose existed to exclude the defense. TEX. PENAL CODE ANN. § 9.22 (Vernon 2003). We review the evidence offered in support of the necessity defense in the light most favorable to Holz, and assess any justification based on necessity from her standpoint. *Wood v. State*, 271 S.W.3d 329, 333 (Tex. App.—San Antonio 2008, pet. ref'd).

The evidence presented in support of the defense was Holz's testimony that it was necessary to keep the dogs inside the house because someone had destroyed a portion of the fence where she

19

had kept them, and the dogs would otherwise be at risk. Holz claimed that although she had restored the fence, there were some dogs which were so sick, they needed to be fed with syringes. With the exception of the need to feed the animals, no further justification or description of imminent harm is briefed. Holz did not explain why the dogs had to reside inside the house rather than be placed with the other dogs in the outdoor pens left intact. She also provided no justification for why the dogs remained inside the house, destroying the property, after the fence was replaced.

Holz's belief that housing the dogs inside was necessary can be deemed unreasonable as a matter of law if there is a complete absence of immediate necessity or harm. *Arnwine v. State*, 20 S.W.3d 155, 159 (Tex. App.—Texarkana 2000, no pet.). Imminent harm is one that "requires an emergency situation where a split-second decision is necessary to avoid that harm." *Wood*, 271 S.W.3d at 334. The harm "must be impending, not pending; that is, it must be on the 'point of happening, not about to happen.'" *Washington v. State*, 152 S.W.3d 209, 212 (Tex. App.—Amarillo 2004, no pet.) (quoting *Smith v. State*, 874 S.W.2d 269, 272–73 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). We conclude there was no evidence presented to the jury that risk to the dogs from starvation or otherwise was an imminent, rather than a theoretical threat, requiring keeping them inside the house.

Moreover, before one can properly raise the defense of necessity, he or she must admit to having committed criminal mischief. *Young v. State*, 991 S.W.2d 835, 839 (Tex. Crim. App. 1999); *Arnwine*, 20 S.W.3d at 158. Holz's argument on appeal makes clear that she seeks to use the defense

of necessity, coupled with the belief that she owned the house, to rebut the State's evidence that she had the requisite criminal mischief mens rea. Texas law clarifies

> with respect to defenses such as necessity . . . when the defensive evidence merely negates the necessary culpable mental state, it will not suffice to entitle the defendant to a defensive instruction. Rather, a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense *including* the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct.

*Shaw v. State*, 243 S.W.3d 647, 658 (Tex. Crim. App. 2007) (citing *Young*, 991 S.W.2d at 838).

Because Holz did not admit she committed criminal mischief, and her defensive "posture serve[d] only to negate the culpable mental element of the offense," the trial court did not err in refusing the necessity defense instruction. *See Shaw*, 243 S.W.3d at 660; *Young*, 991 S.W.2d at 839. Holz's last point of error is overruled.

We affirm the trial court's judgment.


                              Josh R. Morriss, III
                              Chief Justice

Date Submitted:     August 19, 2009
Date Decided:       September 30, 2009

Publish

21