

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

PD-1786-09

BARBARA HOLZ, Appellant

v.

THE STATE OF TEXAS

On Discretionary Review
from the Sixth Court of Appeals,
Marion County

*WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, J., did not participate.*

We granted discretionary review in this case to determine whether a non-expert property owner's testimony about the cost of repairing or restoring his damaged property can ever be sufficient without further evidence to prove the pecuniary-loss element of a criminal mischief offense. We hold that such evidence can be sufficient. We therefore

reverse the judgment of the Sixth Court of Appeals and remand the case to that Court to consider the sufficiency of the owner's testimony in this case.

## I. Background

A person commits the offense of criminal mischief when she intentionally or knowingly damages or destroys tangible property without the effective consent of the owner.[1] The amount of pecuniary loss suffered by the owner determines the degree of the offense. If the property is damaged (as opposed to destroyed) the amount of pecuniary loss is determined by "the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred."[2]

In the present case, the indictment alleged that the appellant "did . . . intentionally and knowingly damage or destroy tangible property, to-wit: a mobile home, by allowing dogs to remain in said mobile home, without the effective consent of John Lawrence, the owner of said property, causing pecuniary loss of $1500 or more but less than $20,000 to said owner."[3] At trial, the State elected to proceed on the theory that appellant had damaged, rather than destroyed, the mobile home.

Shawn Cox, an investigator for the Marion County Sheriff's Office, and

---

[1] PENAL CODE § 28.03(a)(1).

[2] *Id.*, at § 28.06(b).

[3] The case was tried together with another criminal mischief case in which the State proved that the appellant destroyed a house owned by the federal government by living in the house without the consent of the government and allowing approximately 86 dogs to live, urinate, and defecate in the house over a period of months. The Sixth Court of Appeals affirmed the appellant's conviction in that case. *Holz v. State*, 2009 WL 3097240 (Tex. App.–Texarkana September 30, 2009).

Christopher West, an investigator for the Society for the Prevention of Cruelty to

Animals, provided evidence of the damage to the mobile home. Cox testified that "when

you go into the house there's feces on the carpet, you can smell the feces and the urine. It

wasn't pleasant, but it wasn't a health hazard either …."[4] West testified that there was one

dog in the mobile home along with five to ten piles of feces and an odor of urine and

feces. In the house across the street where the appellant lived with her 86 other dogs,

West's ammonia meter "maxed out" at 99 parts per million.[5] West gave the opinion that

his ammonia meter probably would have registered only one part per million if he had

taken a measurement in the mobile home.

West was unable, however, to provide an opinion on the cost of repairs or

restoration:

> [Defense Counsel]: And from looking at the mobile home … what would
> you have had to do to clean it up in your opinion if you were going to clean
> it up after you took that dog out?
>
> [West]: … I couldn't tell you other than obviously picking up the obvious
> feces inside the home, cleaning it. If the urine had soaked through the carpet
> into the floor, then all the floor would either have to be sealed or ripped up I
> would assume.
>
> [Defense Counsel]: How much feces was on the floor as you recall?

---

[4] Cox's photographs of the mobile home, presented to the jury as State's Exhibit 1, do not appear to show the areas of soiled carpet.

[5] West carried the meter to warn him if there were hazardous levels of ammonia coming from the urine of the dogs. He testified that "anything above 12 parts per million starts becoming hazardous to human health. … At 35 parts per million you cannot work in an atmosphere for more than fifteen minutes. Once it reaches 50 parts per million you should not spend more than five minutes in the atmosphere."

[West]: I remember five to ten piles approximately.

…

[Defense Counsel]: Do you recall how big the carpeted area was roughly?

[West]: I'm going to estimate a hundred square feet, ten foot by ten foot, possibly a little larger. I don't remember.

…

[Defense Counsel]: Other than the smell of urine and the feces in the carpeted area did you see any damage to that structure?

[West]: No sir, I don't remember any damage.

John Lawrence, the owner of the mobile home, testified about the damage to the mobile home and the cost of repair. Inside the mobile home there was "a strong ammonia smell and also feces in the living room." At the request of the State prosecutor, Lawrence obtained an estimate to replace all of the carpet in the mobile home:

> [State]: And did I ask you to see about how much it would cost or what kind of estimate you would get to replace that carpet and not even getting into extracting perhaps flooring, particle board flooring, or the boards around or the walls for damage, did you look into that?
>
> [Lawrence]: Yes, I had called Holloway Carpet in Marshall and just told them it was a 12-by-65 mobile home to keep them from driving up there because most of them are about the same size as far as rooms. I told them it was two bedroom and living room that need to be replaced.
>
> [State]: And what kind of estimate did you get?
>
> [Lawrence]: $2,100.
>
> …

[State]: And is all that carpet essentially ruined?

[Lawrence]: Yes.

Lawrence conceded, however, that he did not attempt to ascertain the cost or feasibility of cleaning the carpet rather than replacing it:

[Defense Counsel]: Did you ever try to clean the carpet or look at it with reference to cleaning it to see what it would take to clean it?

[Lawrence]: Since this happened [or before]?

[Defense Counsel]: Since this happened.

[Lawrence]: … No.

Furthermore, Lawrence testified that certain portions of the carpet in the hallway of the mobile home had been previously damaged by a water leak.

The appellant's testimony suggested that the cost of replacing the soiled carpet in the mobile home would be less than $180. The appellant testified that the installed cost of carpet for a mobile home would be between $10 and $15 per square yard.[6] The only area in the mobile home that was soiled was the living room, and that area would require only twelve square yards of carpet.

The jury charge instructed the jury that if it found the appellant guilty of criminal mischief, but found that the pecuniary loss was less than $1,500 and greater than $500, it should find the appellant guilty only of the lesser-included offense of Class A

---

[6] The appellant testified that she was familiar with the cost of carpet through her career in commercial and residential real estate.

misdemeanor criminal mischief.[7] The jury found the appellant guilty of that lesser-included offense.

## II. Appeal

Among other points of error on appeal, the appellant challenged the sufficiency of the evidence to prove pecuniary loss of at least $500.[8] The Court of Appeals found that Lawrence was the State's sole source of evidence regarding the amount of pecuniary loss, and Lawrence's only evidence of the amount of pecuniary loss was the $2,100 estimate he received from Holloway Carpet.[9] The Court cited *English v. State*[10] for the proposition that "Texas law is clear that unless a complainant is an expert, 'an estimate of damage or an opinion on the amount of damage without further evidence is insufficient to prove the cost of repair.'"[11] The Court also cited *Elomary v. State*[12] and *Sebree v. State*[13] for the following proposition: "'Off-the-wall,' opinion testimony, or a mere estimate of cost of repair, '*without further evidence*,' is not sufficient to prove the cost of repairs for a

---

[7] Criminal mischief causing pecuniary loss between $1,500 and $20,000, as alleged in the indictment, is a state jail felony. PENAL CODE § 28.03(a)(4)(A).

[8] *Holz*, 2009 WL 3097253, at *1.

[9] *Id.*, at *2.

[10] 171 S.W.3d 625 (Tex. App. – Houston [14th Dist.] 2005).

[11] *Holz*, 2009 WL 3097253, at *2.

[12] 796 S.W.2d 191 (Tex. Cr. App. 1990).

[13] 695 S.W.2d 303 (Tex. App.–Houston [1st Dist.] 1985).

criminal mischief conviction."[14] Because no further evidence on cost of repair was presented beyond Lawrence's testimony, the Court held this evidence to be insufficient to establish pecuniary loss exceeding $500, and rendered a judgment of acquittal.[15]

### III. Petition for Discretionary Review

We granted discretionary review of the following grounds presented in the State's petition:

> (1) Is an owner's opinion of the cost of repair sufficient to prove the amount of pecuniary loss in a prosecution for criminal mischief by damage to property?
>
> (2) Is the legitimacy of a property owner's opinion of the cost of repair to his property, in order to prove pecuniary loss, an issue of admissibility of evidence or one of sufficiency of evidence, and regardless, should the defendant's failure to object to the evidence be considered a procedural default?

The State argues that an owner's opinion of the cost to repair his property should be sufficient to prove pecuniary loss in a criminal mischief case in the same manner as an owner's opinion of the value of his stolen property can be sufficient to prove value in a theft case. The State acknowledges that cases from several courts of appeals and other jurisdictions have held that the testimony of a non-expert owner is not sufficient to prove the cost of repair. Nevertheless, the State contends that these decisions are rooted in a concern that this testimony will consist largely of hearsay, and such hearsay concerns

---

[14] *Holz*, 2009 WL 3097253, at *2 (emphasis in original).

[15] *Id*., at *3.

should be considered issues of admissibility of evidence rather than sufficiency of evidence.

The appellant counters that Texas law under *Sebree, Elomary*, and their progeny requires expert testimony to prove the cost of repair in a criminal mischief case. She further argues that Lawrence's testimony was not legally sufficient because the State failed to tie the $2,100 estimate obtained by Lawrence to the repairs actually necessary in the mobile home.

## IV. Understanding *Sebree* and *Elomary*

The disagreement between the parties as to the sufficiency of non-expert owner testimony may stem from confusing language in our opinion in *Elomary.* In *Elomary*, the appellant intentionally drove his vehicle into that of the complainant.[16] A claims adjuster from the complainant's insurance company testified that he appraised the complainant's vehicle and concluded "that the fair market value of the repairs that would have to be done … would be $518.40."[17] The complainant had her vehicle repaired, but testified that "she did not know the exact amount of money that the total repair cost was, … [and] that the actual cost of repair work done to her [vehicle] could have been less than $200."[18] The jury convicted the Elomary, but the Sixth Court of Appeals held the evidence to be

---

[16] 796 S.W.2d, at 192.

[17] *Ibid*.

[18] *Ibid*.

insufficient to prove pecuniary loss between $200 and $750 because "[n]o witness testified about the cost of the repair or restoration, and no receipt or other documentation showing the cost of repairing the car was submitted in evidence."[19]

In reversing the Court of Appeals, we made four important statements. First, we held that the cost of repairs should be "conditioned on what the fair market value of such might be."[20] Second, we agreed with *Sebree*'s holding that "the criminal mischief statute does not require that damaged property that can be repaired be actually repaired in order to establish the cost of the repair work."[21] Third, upon one condition, we agreed with *Sebree*'s holding distinguishing between evidence of "damage" and evidence of "repair cost":

> [I]f . . . an individual . . . is not competent to give an expert opinion as to repair costs, but is merely giving his "off-the-wall" lay opinion, . . . "an estimate of damage or an opinion on the amount of damage without further evidence is insufficient to prove the cost of repairs as required by sec. 28.06(b) of the Texas Penal Code."[22]

Finally, we cited Article VII of the Texas Rules of Criminal Evidence to support the following cautionary statement:

> The distinction between an individual merely stating his opinion or conclusion what the amount of the damages might be, or stating from hearsay what someone else said what the damages might be, from an

---

[19] *Elomary v. State*, 778 S.W.2d 909, 910 (Tex. App.–Texarkana 1989).

[20] *Elomary*, 796 S.W.2d, at 193.

[21] *Ibid.*

[22] *Ibid.* (quoting *Sebree*, 695 S.W.2d, at 305).

individual who is shown to be qualified to give his or her expert opinion of what the fair market value of the cost of repairs to the damaged property might be should always be kept in mind.[23]

Our first and second statements warrant no further discussion under the facts of this case. We can clarify the meaning of the third statement by reviewing *Sebree* itself. The appellant in *Sebree* seriously damaged the complainant's vehicle.[24] The complainant took the vehicle to an automobile dealer where she received "an estimate of the damages."[25] Based on this estimate, she testified that there was "six hundred and seventy dollars worth of damage."[26] She had the car repaired, but did not say how much she paid for the repairs.[27] The First Court of Appeals found the evidence of pecuniary loss to be insufficient, and explained the difference between evidence of damage and evidence of cost of repairs:

> The evidence adduced by the state [*sic*] to support the conviction for criminal mischief speaks in terms of "damage" and "estimate of damage" rather than the statutory requirement of "cost of repairs." Although it is possible that evidence could show that damages and costs of repair are synonymous in certain circumstances, we are of the opinion that in the instant case the State has failed to prove that the two terms are synonymous. The evidence adduced by the state [*sic*] failed to connect the estimate of damages in any manner with the cost of repair. We do not agree with the appellant's contention that it was necessary for the state [*sic*] to establish

---

[23] *Id.*, at 193-94.

[24] 695 S.W.2d, at 304.

[25] *Id.*, at 305.

[26] *Id.*, at 304-05.

[27] *Id.*, at 305.

what amount of money was paid or to identify who did the repairs and what repairs were done. To require this proof would enlarge upon the proof required by the statute and would place a burden upon the complaining witness or owner of the damaged property to have the property repaired before a conviction could be obtained. We hold that the statute does not require that property be repaired to establish the cost of repair as set forth in sec. 28.06(b). We further hold that an estimate of damage or an opinion on the amount of damage without further evidence is insufficient to prove the cost of repair as required by sec. 28.06(b) of the Texas Penal Code.[28]

Texas courts relying on *Sebree* and *Elomary* have occasionally missed the key distinction between evidence of damage and evidence of cost of repair. These courts have misread the holdings, or simply substituted the term "cost of repair" for "damage," to create a distinction between the sufficiency of lay versus expert testimony *per se*.[29] Understood properly, the third statement in *Elomary* simply affirms the unremarkable proposition that an unsupported lay opinion as to *damage*, without more, will be insufficient to prove *cost of repair*.[30] *Elomary* does not hold that the State must present

---

[28] *Id.*, at 305.

[29] *See, e.g., Nixon v. State*, 937 S.W.2d 610, 612 (Tex. App.–Houston [1st Dist.] 1996) ("*Elomary* and *Sebree* conclude that expert testimony is required in a criminal mischief case to establish the fair market value of the cost of repairs to damaged property if there is no other evidence than a lay witness."); *Reasor v. State*, 281 S.W.3d 129, 133 (Tex. App.–San Antonio 2008) (citing *Elomary* for the proposition that "without further evidence, 'off-the-wall' lay opinion testimony or a mere estimate of cost of repair is insufficient to prove the cost of repairs for a criminal mischief conviction"); *Barnes v. State*, 248 S.W.3d 217, 220 (Tex. App.–Houston [1st Dist.] 2007) (citing *Elomary* for the proposition that "'off the wall,' opinion testimony, or a mere estimate of cost of repair, '*without further evidence*,' is not sufficient to prove the cost of repairs for a criminal-mischief conviction," but correctly noting that "the court fell short of requiring the State to present expert testimony to establish the repair cost element required by Section 28.06(b) of the Penal Code.") (emphasis in original); *Holz*, 2009 WL 3097253, at *2.

[30] In *Elomary*, we conditioned the *Sebree* holding on the understanding that the holding "relates to an individual who is not competent to give an expert opinion as to repair costs, but is merely giving his 'off-the-wall' lay opinion." 796 S.W.2d, at 193. Implicit in this condition is an assumption that an expert's opinion on damage is likely to be closely linked to his experience with costs of repair, while the lay owner's unsupported opinion on damage is more likely to be influenced by factors other than cost of repair, perhaps such as loss of use, diminution of resale value in the damaged state, or loss of sentimental or aesthetic value.

expert testimony to prove cost of repair.

    This conclusion is supported by the five cases we cited in *Elomary* at the conclusion of our opinion: *Deas v. State*,[31] *Hernandez v. State*,[32] *Sullivan v. State*,[33] *Scott v. State*,[34] and *Porras v. Craig*.[35] None of these cases require expert testimony to prove cost of repair. *Deas* held evidence to be insufficient where the State failed to prove that a garage door had been destroyed, rather than damaged, and therefore that replacement value could be used to determine pecuniary loss instead of repair cost.[36] *Hernandez* held expert testimony of cost of repair to be sufficient, but did not require expert testimony, and held that an expert need not personally observe the property in order to give an opinion on cost of repair.[37] *Sullivan* affirmed that fair market value should be used to establish the value of property stolen in theft cases, and held that an owner's testimony was sufficient to prove fair market value.[38] *Scott* distinguished *Sullivan* on its facts in holding that an owner's testimony of trade-in value was not sufficient to prove fair market

---

[31] 752 S.W.2d 573 (Tex. Cr. App. 1988).

[32] 468 S.W.2d 387 (Tex. Cr. App. 1971).

[33] 701 S.W.2d 905 (Tex. Cr. App. 1986).

[34] 741 S.W.2d 435 (Tex. Cr. App. 1987).

[35] 675 S.W.2d 503 (Tex. 1984).

[36] 752 S.W.2d, at 575.

[37] 468 S.W.2d, at 391.

[38] 701 S.W.2d, at 909.

value.[39] *Porras* held, in the context of a civil suit for permanent damage to land, that a landowner could testify as to the fair market value of his land even if he could not qualify to testify about the value of like property belonging to someone else.[40]

A holding in *Elomary* that expert testimony was required to prove cost of repair would plainly be in tension with *Sullivan* and *Porras*, among other cases. In *Sullivan* we held:

> When the proof of value is given by a non-owner, the non-owner must be qualified as to his knowledge of the value of the property and must give testimony explicitly as to the fair market value or replacement value of the property. However, when the owner of the property is testifying as to the value of the property, he or she may testify as to his or her opinion or estimate of the value of the property in general and commonly understood terms. Testimony of this nature is an offer of the witness' best knowledge of the value of his property. Such testimony will constitute sufficient evidence for the trier of fact to make a determination as to value based on the witness's credibility.[41]

The fact that our opinion in *Elomary* does not attempt to distinguish the line of authority represented by *Sullivan* and *Porras* further discredits the theory that *Elomary* crafted a new rule requiring expert testimony to prove cost of repairs.

In our fourth statement in *Elomary*, we cited Article VII of the Texas Rules of Criminal Evidence (now the Texas Rules of Evidence) to support the following cautionary statement:

---

[39] 741 S.W.2d, at 439.

[40] 675 S.W.2d, at 504.

[41] *Id.*, at 909.

> The distinction between an individual merely stating his opinion or conclusion what the amount of the damages might be, or stating from hearsay what someone else said what the damages might be, from an individual who is shown to be qualified to give his or her expert opinion of what the fair market value of the cost of repairs to the damaged property might be should always be kept in mind.[42]

We then appeared to contrast the questionable *admissibility* of lay opinion in *Sebree* with the *admissible* expert opinion in *Elomary* to support our decision to uphold the *sufficiency* of the evidence.[43] But, as we said in *Moff v. State* in the context of a theft case, "[b]oth litigants and reviewing courts should be careful to distinguish claims of improperly admitted evidence . . . from legal insufficiency of all admitted evidence – even improperly admitted evidence."[44] Our fourth statement in *Elomary* illustrates our confession in *Moff* that we ourselves "ha[ve] not always been sufficiently careful in that regard."[45] Rather than influencing sufficiency analyses, the cautionary statement in *Elomary* should be read simply as a warning to practitioners that separate admissibility issues related to hearsay[46] and lay and expert opinions[47] may arise in the context of the pecuniary-loss element of a

---

[42] 796 S.W.2d, at 193-94. Article VII governs the admissibility of opinions and expert testimony.

[43] *Id.*, at 194.

[44] 131 S.W.3d 485, 490 (Tex. Cr. App. 2004).

[45] *Id.*

[46] TEX. R. EVID. art. VIII.

[47] TEX. R. EVID. art. VII.

criminal mischief case.[48]

## V. Preservation of Error

The State's second ground for review asks whether the legitimacy of an owner's opinion on repair cost is an issue of admissibility or sufficiency, and whether a defendant's failure to object to evidence of repair cost should be considered a procedural default regardless of whether it is an issue of admissibility or sufficiency. *Moff* supplies the answer. An owner's opinion on repair cost could raise issues of admissibility or sufficiency, just like other types of testimony.[49] In this case the issue is the sufficiency of the evidence, because that is the issue raised by the appellant. *Moff* is clear that, unlike an admissibility claim, a sufficiency claim need not be preserved by objection at trial:

> If a defendant challenges the legal sufficiency of the evidence to support his conviction on direct appeal, the appellate court always has a duty to address that issue, regardless of whether it was raised in the trial court. . . . On the other hand, when a defendant claims on appeal that the trial court erred in admitting or excluding evidence, he must have made a proper and specific objection at the time the evidence was offered or excluded to preserve his right of review of that evidentiary claim.[50]

## VI. Disposition

In this case, the Court of Appeals held the evidence was insufficient because that Court interpreted *Elomary* and its progeny to require that the State present expert

---

[48] 131 S.W.3d, at 488-89.

[49] *Id.*, at 489 (describing how a witness's hearsay testimony could trigger both admissibility and sufficiency claims).

[50] *Id.*, at 488-89.

testimony to prove the cost of repair.[51] We have clarified that *Elomary* does not require

the presentation of expert testimony. We therefore remand this case to the Court of

Appeals so that it can proceed to consider the sufficiency of the admitted evidence.[52]

Delivered: September 22, 2010.
Publish.

---

[51] *Holz*, 2009 WL 3097253, at *2.

[52] The appellant argues that the evidence is insufficient because the $2,100 carpet-replacement estimate was not tied to the damage caused by the appellant. *See, e.g., Crawley v. State*, 513 S.W.2d 62, 65 (Tex. Cr. App. 1974) (finding evidence sufficient to prove extent of injury to complainant's vehicle where a shop foreman testified to the cost of repairs and the State proved that the repairs were required as a result of the defendant's actions); *Wise v. State*, 494 S.W.2d 921, 925 (Tex. Civ. App.–Fort Worth 1973) (finding that the cost of repainting an entire vehicle was not sufficient to prove the cost of repairs where a minor damaged the vehicle by writing only on its hood); *Athey v. State*, 697 S.W.2d 818, 821 (Tex. App.–Dallas 1985) (holding that the State has a burden "to show that the repairs in question were reasonable and were a necessary result of defendant's acts, rather than a result of previous damage").