

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00234-CR

_____

LINDA KAY PHARIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2
Parker County, Texas
Trial Court No. CCL1-11-0739

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

When Karen Kessler, Animal Control Officer for the Parker County[1] Sheriff's Department, went to the location at which there were reported to be several dead horses, she found Linda Kay Pharis and another person unloading a bale of hay near a dead horse. The water troughs were empty, there was no feed around, and the temperatures had been running at or above the century mark for several days. Eight dead horses were found on the property, and one other was in such bad shape that a veterinarian had to euthanize it. Pharis was living rent-free in a trailer on the property in return for an agreement to repair it and had agreed with the owner that she would check on the horses every three days. To further complicate matters, two neighbors, who had been the primary caretakers of the animals, had recently left the country without Pharis' knowledge. Pharis was convicted of nine counts of cruelty to livestock animals, one for each of the dead horses.[2]

On appeal, Pharis has combined issues regarding double jeopardy, the jury charge, and sufficiency of the evidence into a single argument. She also complains regarding her sentence and fine. We modify the judgment to allow for consideration of good-time credit and, affirm the judgment, as modified, because (1) Pharis' right to be free from double jeopardy has not been violated, (2) the charge is not erroneous, (3) sufficient evidence supports the conviction, (4) good-time credit should be considered, and (5) the fine is valid.

---

[1]Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

[2]The jury assessed, and the trial court sentenced Pharis to, 365 days in county jail on each charge. The sentences were set to run concurrently, and the court levied a $4,000.00 fine.

*(1)    Pharis' Right To Be Free from Double Jeopardy Has Not Been Violated*

Pharis contends that, because the charges do not distinguish the nine dead horses, she has suffered multiple punishments for the same offense and thus has been improperly subjected to double jeopardy.[3]   The problem at the base of Pharis' complaint is that neither the amended information nor the jury charge separately identifies each animal.  Every one of the charges identically accuses Pharis of failing "unreasonably to provide necessary food, water and care for . . . one (1) horse."

One problem with Pharis' contention is that she did not raise a double jeopardy claim at trial and also did not claim lack of notice regarding the nature of the prosecutions.  A claim may be raised for the first time on appeal if (1) the undisputed facts show the double-jeopardy violation is clearly apparent from the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest.  *Garfias*, 2014 WL 714718, at *2.  Here, the violation is not clear from the face of the record.  Additionally, the rules of procedural default are appropriate where, as here, there was no lack of notice to the defendant or confusion about the facts alleged, and, if raised below, the situation could have been easily solved by the trial court.

Even were we to assume that procedural default serves no legitimate interest in this case, we do not discern a double-jeopardy violation here.  The Fifth Amendment to the United States Constitution, and Article I, Section 14, of the Texas Constitution, protect individuals from being

---

[3]There are three types of double jeopardy claims:   (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Garfias v. State*, No. PD-1544-12, 2014 WL 714718, at *2 (Tex. Crim. App. 2014).

tried twice for the same offense and possibly receiving double punishments. *Albernaz v. United States*, 450 U.S. 333, 343 (1981); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Stephens v. State*, 806 S.W.2d 812, 814–15 (Tex. Crim. App. 1990). But, when evaluating whether double jeopardy has occurred, the entire record, not just the indictment, is reviewed. *Gollihar v. State*, 46 S.W.3d 243, 258 (Tex. Crim. App. 2001); *Holz v. State*, No. 06-08-00224-CR, 2009 WL 3097240, at *8 (Tex. App.—Texarkana Sept. 30, 2009, pet. ref'd). And, here, the record does sufficiently distinguish among the animals involved in the various cases, even though distinguishing information is not provided in the pleadings, jury charges, or judgments. The record contains a picture or other identifying information as to each of the nine dead horses sufficient to connect a particular horse with each case. Pharis was not placed in jeopardy more than once for each offense.

*(2)     The Charge Is Not Erroneous*

Pharis also contends that she was denied due process of law because the charge expanded the State's theory beyond the allegations of which she had notice.

In analyzing a jury charge complaint, we review the charge under the *Almanza* standard. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). We first determine whether error exists in the charge and then, if there was error, whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The level of harm an appellant must demonstrate as resulting from the erroneous jury instruction depends on whether the appellant properly objected to the error. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). When a proper objection is made at trial, reversal

4

is required if the error is "calculated to injure the rights of defendant," and the appellant need only demonstrate "some harm" on appeal. *Id.*; *see also Almanza*, 686 S.W.2d at 171. In the case of unpreserved error, reversal is required only when "the error is so egregious and created such harm that [she] 'has not had a fair and impartial trial'—in short 'egregious harm.'" *Almanza*, 686 S.W.2d at 171; *see Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd). "Egregious harm" results from errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991); *Boones v. State*, 170 S.W.3d 653, 660 (Tex. App.—Texarkana 2005, no pet.).

In this case, there was no objection to the charge. Cruelty to a livestock animal is an offense defined by the Texas Penal Code, and the charge paraphrased the language of the statute. Pharis specifically complains because, in addition to the language setting out the elements of the offense, the charge also instructs the jury about two statutory exceptions to the offense. The first exception provides that, if the conduct was a generally accepted and lawful form of conduct performed in support of animal management, then Pharis did not commit the offense.

The first portion of the charge defines the offense using the language of the Penal Code.

> Our law provides a person commits an offense if he intentionally or knowingly: Fails unreasonably to provide necessary food, water or care for a livestock animal, to-wit: one (1) horse, by not taking necessary actions to verify that the horse had adequate food, water or care, under the conditions then existing, and Defendant's conduct was not a generally accepted and otherwise a lawful form of conduct occurring solely for the purpose of or in support of fishing, hunting, or trapping; or wildlife management, wildlife or depredation control, or shooting preserve

5

practices as regulated by state and federal law; or animal husbandry or agriculture practice involving livestock animals.

The charge then provides an application section that repeats some of the language quoted above, and then goes on to instruct the jury:

> *And* [*if*] *you further find that the Defendant's conduct was not a generally accepted and otherwise lawful use of an animal* solely for the purpose of fishing, hunting, or trapping; and was not generally accepted and otherwise lawful wildlife control as regulated by state and federal law; and was not generally accepted and otherwise lawful animal husbandry or farming practice involving livestock; then you will find the Defendant guilty as charged.

The charge is repetitive, but that does not make it erroneous. Pharis focuses on one phrase in the paragraph asking if her conduct "was not a[n] . . . otherwise lawful use of an animal" and suggests that the phrase adds a different type of theory on which the State could convict, one of which she had no warning or notice.

We disagree. The language is a close paraphrase of the statutory language and actually increases the burden on the State, requiring it to also prove that her actions or inactions were not otherwise lawful or generally accepted practices. The phrasing is not improper, although it could be improved. It does not provide another theory for conviction, but effectively requires the State to disprove a potential defensive theory. We find no error in the charge.

*(3)    Sufficient Evidence Supports the Conviction*

Pharis also claims that the evidence is insufficient to support the verdict.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893,

6

912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

A person commits an offense if he or she intentionally or knowingly, among other things, fails unreasonably to provide necessary food, water, or care for a livestock animal in the person's custody. TEX. PENAL CODE ANN. § 42.09(a)(2) (West 2011). Evidence exists that Pharis was aware that the horses had lost a lot of weight and were looking gaunt, that the only source of water they had was water provided by humans, that she was a caretaker of the horses, and that she was responsible for checking on them every three days. A veterinarian who examined the horses testified that it was not possible that they had access to water during the preceding three days. Based on their condition, he believed they had gone without water for at least five-to-eight days.

Given the evidence of temperatures exceeding 100 degrees each of several consecutive days, which would exacerbate the animals' predicament, Pharis' admission that she was to look in on the animals every three days, coupled with her background as a veterinary assistant and her knowledge of the needs of animals, it was not unreasonable for the jury to have found from the

7

evidence that she committed the crime of cruelty to a livestock animal. The evidence is legally sufficient.

*(4)     Good-Time Credit Should Be Considered*

Pharis argues that the trial court exceeded the scope of its authority by ordering her to serve the jail portion of her sentence "day for day." The State has conceded error, and we conclude that error has indeed been shown because that language is contrary to the sentencing procedures set by the Legislature. The judgment of conviction and order committing Pharis to jail is hereby modified to allow good-time credit to be considered. *See* TEX. CODE CRIM. PROC. ANN. art. 42.032 (West Supp. 2013); *Kopesk v. Martin*, 629 S.W.2d 743, 745 (Tex. Crim. App. 1982); *Hencey v. State*, 904 S.W.2d 160, 161 n.1 (Tex. App.—San Antonio 1995, no pet.).

*(5)     The Fine Is Valid*

Pharis contends that the trial court abused its discretion by ordering her to pay a fine and any amounts other than court costs because she is indigent. She also claims that requiring her to pay off the fine through incarceration is improper.[4] However, fines are expressly sanctioned, with limitations on time not to exceed the maximum term of confinement authorized for the underlying offense. TEX. CODE CRIM. PROC. ANN. art. 43.03 (West Supp. 2013).

The argument seems to be based on situations where individuals convicted of fine-only crimes were incarcerated so that their fines could be paid off by their work for the State. *See Ex parte Minjares*, 582 S.W.2d 105, 109 (Tex. Crim. App. [Panel Op.] 1978). It appears Pharis

---

[4]We recently ruled that, under the circumstances present in another case, "laying out" fines by serving time was improper. *See Ex parte Jeff Burks*, No. 06-13-00217-CR, 2014 Tex. App. LEXIS 4507 (Tex. App.—Texarkana Apr. 25, 2014, no pet. h.) (mem. op., not designated for publication). In *Burks*, however, the record did not demonstrate that the trial court held a hearing in compliance with the statute authorizing the practice. *See* TEX. CODE CRIM. PROC. ANN. art 43.03(d).

8

is concerned that, as an indigent person who would be required to serve time "day for day," she would necessarily remain incarcerated for the entire calendar year ordered by the trial court, or perhaps she would remain incarcerated until the full amount of the fine was paid no matter how long that might take. We hereby modify the judgment to remove the "day for day" language. Also Article 43.03 of the Texas Code of Criminal Procedure contains safeguards to prevent the scenario posited by counsel from occurring. Under these facts, counsel has not shown further error.

As modified, the judgment is affirmed.


Josh R. Morriss, III
Chief Justice


Date Submitted:     May 29, 2014
Date Decided:      June 17, 2014

Do Not Publish