**Opinion filed August 30, 2018**



## In The

# Eleventh Court of Appeals

_____

## No. 11-16-00221-CR

_____

## PANIKA MCFADDEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**
**Ector County, Texas**
**Trial Court Cause No. C-16-0738-CR**

## M E M O R A N D U M   O P I N I O N

Panika McFadden appeals her jury convictions for criminal mischief and evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A) (West Supp. 2017), § 38.04(a), (b)(2)(A) (West 2016). The jury assessed punishment for the criminal mischief count at confinement for 270 days in a state jail facility. For the evading arrest count, the jury assessed punishment at confinement for two years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $1,000, but the jury recommended that the two-year

sentence be probated. The trial court sentenced Appellant accordingly, but it suspended the imposition of the two-year sentence and placed Appellant on community supervision for three years.

In six issues on appeal, Appellant contends that (1) the trial court erred in denying her motion for mistrial based on the prosecutor's comments in closing argument; (2) the evidence was insufficient to sustain her conviction for evading arrest; (3) the evidence was insufficient to sustain her conviction for criminal mischief; (4) the trial court erred in the admission of hearsay evidence; (5) the trial court improperly instructed the jury as to Appellant's eligibility for parole and good conduct time; and (6) Appellant received ineffective assistance of counsel. We affirm.

*Background Facts*

Appellant was involved in a confrontation with her former boyfriend, Stephen Luate, in the early morning hours. Appellant went to Luate's apartment, rang the doorbell, and awoke Luate and his wife. Luate opened his apartment door to see Appellant "hiding behind a tree." Luate told Appellant to go home and Appellant responded by cursing at him. Luate attempted to close the door and go back inside, but Appellant obstructed the door with her foot. Luate told his wife "to call the cops." Luate testified that he could hear his wife dialing the police because his wife "had a lady on the speaker phone."

Luate then pushed Appellant out of his doorway, and according to Appellant, "she just went off." Luate testified that Appellant repeatedly struck him in the face and stomach but that he "blocked most of the shots." Laute was able to separate himself from Appellant and eventually shut the door. Luate next heard "shattering noises" and saw Appellant on top of Luate's car with a large rock; "she broke the front [windshield] first, and then she went to the back, and picked up another rock and thr[e]w it in the back window." Luate testified that Appellant damaged "[t]he

2

front hood, the front windshield, the top of the car, . . . the back windshield and the back trunk part and a little bit on the side." Appellant ran to her car when the police arrived.

Corporal Ian Pantoja, of the Odessa Police Department, arrived at the scene in full uniform and in a patrol vehicle. He observed Luate point at Appellant's car. Corporal Pantoja parked his vehicle near the rear of Appellant's car, turned off his headlights, and exited the patrol vehicle. He did not activate his overhead lights. When he got out of the patrol vehicle, he noticed the lights come on in Appellant's car, and he proceeded to approach Appellant's car with a flashlight. He then repeatedly knocked on Appellant's window and yelled "stop" and "hey." Appellant did not acknowledge Corporal Pantoja, nor did she exit her car. Instead, Appellant backed her car up within four or five yards of Corporal Pantoja's patrol vehicle; she then drove forward, steering her car to the left—toward Corporal Pantoja. As she drove off, Corporal Pantoja broke her window with his baton. Corporal Pantoja did not pursue her. Corporal Pantoja testified that there was no way Appellant could have failed to see his uniform and badge.

*Sufficiency of the Evidence*

We address Appellant's challenges to the sufficiency of the evidence first. The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d

611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.— Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

In her second issue, Appellant contends that the evidence was insufficient to convict her of the offense of evading arrest or detention. A person commits the third-degree felony offense of evading arrest or detention if she intentionally flees from a person she knows is a peace officer attempting lawfully to arrest or detain her and uses a vehicle in flight. PENAL § 38.04(a), (b)(2)(A); *see Ex parte Jones*, 440 S.W.3d 628, 629 (Tex. Crim. App. 2014); *Wise v. State*, No. 11-13-00005-CR, 2014 WL 2810097, at *4–5 (Tex. App.—Eastland June 19, 2014, pet. ref'd) (explaining that offense is a third-degree felony). Appellant argues that she did not know that a police officer, specifically Corporal Pantoja, was trying to arrest or detain her. In support of this contention, she notes that (1) Corporal Pantoja did not activate his emergency lights or siren when he arrived at the scene, (2) there was poor visibility because it was dark and unlighted in the parking lot, (3) Corporal Pantoja did not identify himself as a police officer, (4) the length of the encounter was relatively short, and (5) Appellant never looked at Corporal Pantoja or acknowledged his presence when he was at her driver's side window.

We believe the jury could have found beyond a reasonable doubt from the evidence set out above that Appellant was aware that Corporal Pantoja was attempting to detain her. *See Brown v. State*, 498 S.W.3d 666, 672 (Tex. App.— Houston [1st Dist.] 2016, pet ref'd). We first note that the jury could have inferred that Appellant was aware the police had been called to the scene. Luate, right in front of Appellant, told his wife "to call the cops," and Luate could hear the "lady on the speaker phone." Additionally, Appellant immediately ran to her car when

4

Corporal Pantoja arrived in his patrol vehicle. The jury could also have inferred that Appellant was willfully ignoring Corporal Pantoja's presence and commands. Corporal Pantoja was only about a foot away from Appellant's window; he had his flashlight on; and he repeatedly directed verbal commands at Appellant, all while he was dressed in full uniform. A rational jury could have found beyond a reasonable doubt that Appellant knew that a peace officer was attempting to detain her, that she intentionally fled from that detention, and that she used a motor vehicle in doing so. We overrule Appellant's second issue.

In her third issue, Appellant argues that the evidence was insufficient to prove that she committed the state jail felony offense of criminal mischief. A person commits the offense of criminal mischief if, without the effective consent of the owner, she "intentionally or knowingly damages or destroys the tangible property of the owner." PENAL § 28.03(a)(1). The offense is a state jail felony if the amount of pecuniary loss is $2,500 or more but less than $30,000. *Id.* § 28.03(b)(4)(A). Appellant argues that the evidence does not show a pecuniary loss of more than $2,500.

The State alleged in the indictment that Appellant "intentionally or knowingly damage[d] or destroye[d] tangible property," specifically a "Dodge Charger" by throwing rocks at it without the consent of the owner, thereby causing a "pecuniary loss of $2,500 or more but less than $30,000." To determine the "amount of pecuniary loss . . . if the property is *destroyed*," fair market value is used. *Id.* § 28.06(a) (emphasis added). In contrast, "if the property is *damaged*" the amount of pecuniary loss "is the cost of repairing or restoring the damaged property within a reasonable time after the damage occurred." *Id.* § 28.06(b) (emphasis added). At trial, the State contended that Appellant "damaged" Luate's vehicle.

Luate's vehicle was repaired at an auto body shop after his confrontation with Appellant; the body shop provided Luate with an itemized repair bill. The repair

bill, which was admitted as an exhibit at trial, reflects that numerous repairs were made to Luate's vehicle and that, in total, the cost of repairing the vehicle was $4,647.52. The repair bill itemized costs for the repairs, including parts, labor, paint, tax, and disposal of hazardous materials.

Appellant first claims the evidence was insufficient because the "[t]he State failed to introduce any expert testimony regarding the damages and pecuniary loss to Luate." Appellant argues that Luate's testimony and the final repair bill from the auto body shop are insufficient to prove pecuniary loss under Section 28.06. We disagree. To prove criminal mischief by damage, it was proper for the State to rely upon the final bill from the auto body shop to prove "the cost of repairing or restoring the damaged property" as provided for in Section 28.06(b). While it is true that "an unsupported lay opinion as to the value of damage is insufficient to prove the cost of repair," "the State need not present expert testimony to prove the cost of repairing the property." *Campbell v. State*, 426 S.W.3d 780, 784 (Tex. Crim. App. 2014); *see Holz v. State*, 320 S.W.3d 344, 350 (Tex. Crim. App. 2010) (distinguishing between evidence of damage and evidence of cost of repair).

Appellant next contends that the evidence is insufficient to prove an amount more than $2,500 in pecuniary loss.[1] Appellant contends that the only damage that can be attributed to Appellant from the repair bill is the $955 of damage to the front and back windshields. We disagree. Luate testified that Appellant damaged "[t]he front hood, the front windshield, the top of the car, . . . the back windshield and the back trunk part and a little bit on the side." The repair bill reflects that the cost of repairing the damage to these portions of the car was well above $2,500. Additionally, Luate testified that the total to repair the parts of the vehicle that

---

[1]The jury was provided an instruction on the lesser included offense of Class A misdemeanor criminal mischief. *See* PENAL § 28.03(b)(3)(A) (pecuniary loss of $750 or more but less than $2,500).

Appellant damaged was over $4,000. The evidence was sufficient to support the jury's verdict. We overrule Appellant's third issue.

*Improper Jury Argument*

In her first issue, Appellant contends that the trial court abused its discretion when it denied her motion for mistrial based upon the prosecutor's improper jury argument. During closing argument, defense counsel suggested that Appellant was guilty only of the lesser included offense of Class A misdemeanor criminal mischief because the evidence reflected that the amount of pecuniary loss that may have been caused by Appellant was less than $2,500. Defense counsel suggested that Luate wanted his whole car painted and used this incident as an excuse to do so. Defense counsel argued: "They painted the whole car." The prosecutor began his closing argument by rebutting defense counsel's argument regarding the extent to which Luate's vehicle had been repainted when it was repaired:

> First of all, ladies and gentlemen, I'm sorry to have to do this. [Defense counsel] told you the entire car was painted. The hood was painted, yes, it was replaced. The roof was painted. It was replaced. If you look at the estimate, right fender was blended. What does that mean? You replaced the hood. You've got to get the color to match. You've got to blend a little bit. The deck lid was painted. Yeah. One of the quarter panels was painted. The other one was not. The bumper covers were not. This is a four-door car. Those doors were not painted. *When [defense counsel] said the whole car was painted, he lied. He lied. Why? He's trying to get his client out of trouble. You can't blame him.*

Defense counsel immediately objected, stating that he "did not lie" and that the prosecutor's argument "hit at an opponent over his attorney's back" and was therefore improper. The trial court sustained the objection and instructed the jury to disregard the prosecutor's statement that was directed at the defense attorney. Appellant then requested a mistrial, which was denied.

7

When a trial court sustains an objection, instructs the jury to disregard, but denies a motion for mistrial, as here, we assume without deciding that the argument was improper and look only to whether the trial court abused its discretion when it denied the motion for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). While a prosecutor's "uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney" unquestionably puts the case at risk, only the most egregious argument taints the jury to the extent that it warrants a mistrial. *Mosley v. State*, 983 S.W.2d 249, 258, 260 (Tex. Crim. App. 1998).

To determine whether this nonconstitutional error was reversible or harmless, we apply Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Id.* at 259. In applying that rule to evaluate whether the trial court abused its discretion when it denied a mistrial for improper jury argument, we must consider the three *Mosley* factors. *Hawkins*, 135 S.W.3d at 77. Those factors are "(1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (citing *Mosley*, 983 S.W.2d at 259).

With respect to the first *Mosley* factor, "[p]rejudice is clearly the touchstone." *Hawkins*, 135 S.W.3d at 77. The severity of the prosecutor's misconduct should not be considered in isolation from the question of whether his improper comments had a prejudicial effect. *Id.* at 78. Prosecutors' arguments that "attack the personal morals or trustworthiness of defense counsel are manifestly improper because they undermine the adversarial system by unfairly prejudicing the jury against the

defendant's attorney." *Fuentes v. State*, 991 S.W.2d 267, 274 (Tex. Crim. App. 1999). But when the jury is "in a position to evaluate the truthfulness of the prosecutor's assertion," the prejudice from improper argument may be minimized. *Mosley*, 983 S.W.2d at 260. In fact, when the jury is in such a position, the prosecutor's comments could "backfire if the jury disagrees with the prosecutor's assessment of defense counsels' actions." *Id.*

In the present case, the prosecutor's statements that defense counsel had lied and that he had done so to get his client out of trouble were highly improper. However, the prejudice stemming from the prosecutor's improper comments was lessened by the fact that the point of contention between the prosecutor and defense counsel related to the evidence that had been admitted at trial. The jury was free to determine the fact issue relating to how much of the car had been repainted. Thus, the jury was in a position to evaluate the evidence and determine which attorney had misinterpreted that evidence.

With respect to the second factor, we note that the law generally presumes that a jury will follow the trial court's instruction to disregard. *Archie*, 340 S.W.3d at 741. In the present case, immediately after defense counsel objected to the prosecutor's improper argument, the trial court instructed the jury as follows:

> Ladies and gentlemen of the jury, you are the sole judges of the facts of the case, and you will make your determinations when you deliberate solely based upon the facts of the case, and the objection as to the personal attack is sustained. And, ladies and gentlemen of the jury, you will disregard the statement that -- the last statement that was made directed towards defense counsel.

The prosecutor then continued his closing argument by addressing the evidence presented at trial and without casting any aspersions at defense counsel. We cannot hold that the prosecutor's improper argument in this case was such that the jury would have ignored the trial court's prompt and pertinent instruction to disregard.

9

With respect to the third *Mosley* factor, we must consider the certainty of conviction absent the prosecutor's improper argument. Based on our review of the record—specifically the evidence detailed above, we conclude that the evidence in support of Appellant's convictions was compelling. *See Archie*, 340 S.W.3d at 741–42.

We cannot hold, based on the record before us and the application of the three *Mosley* factors, that the trial court abused its discretion when it denied Appellant's motion for mistrial. Accordingly, we overrule Appellant's first issue.

*Admission of Luate's Out-of-Court Statements*

In her fourth issue, Appellant argues that the trial court abused its discretion when it permitted Corporal Pantoja to testify, over Appellant's objections, as to out-of-court statements made by Luate. We review the trial court's decision to admit evidence under an abuse of discretion standard. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.*

Appellant objected at trial that Luate's out-of-court statements were hearsay and were "cumulative of his testimony." *See* TEX. R. EVID. 801(d), 403. On appeal, Appellant reiterates these complaints. The trial court considered Appellant's objections outside the jury's presence. Corporal Pantoja described Luate as "angry," "frustrated," "excited," and still under the emotions and stress of the situation when he made these statements. The trial court overruled Appellant's Rule 403 objection without comment and then explained that the testimony was admissible under the excited utterance exception to the hearsay rule.

Excited utterances are admissible as an exception to the hearsay rule. TEX. R. EVID. 803(2). An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* The critical determination is whether, at the time the declarant made

10

the statement, he was "still dominated by the emotions, excitement, fear, or pain of the event." *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001) (quoting *McFarland v. State*, 845 S.W.2d 824, 846 (Tex. Crim. App. 1992)). In *McCarty*, the court laid out three conditions for a court to consider when it determines the admissibility of a hearsay statement under the excited utterance exception:

> (1) the "exciting event" should be startling enough to evoke a truly spontaneous reaction from the declarant; (2) the reaction to the startling event should be quick enough to avoid the possibility of fabrication; and (3) the resulting statement should be sufficiently "related to" the startling event, to ensure the reliability and trustworthiness of that statement.

*McCarty*, 257 S.W.3d at 241.

Appellant argues that the excited utterance exception does not apply. We disagree. Luate was awoken in the middle of the night, was physically and verbally assaulted, and witnessed his car being vandalized. This was an "exciting event" sufficient to evoke a spontaneous response from Luate. Moreover, almost immediately after Appellant fled the scene, Corporal Pantoja asked Luate, "What's going on?" Minimal time elapsed between the startling event and the statements that were admitted at trial through Corporal Pantoja. Additionally, Luate's statements were directly related to the startling event. The record reflects that Luate was still dominated by the emotions and stress of the situation when he was talking to Corporal Pantoja at the scene. Accordingly, the trial court did not abuse its discretion when it overruled Appellant's hearsay objection and admitted Luate's out-of-court statements under the excited utterance exception.

Appellant also argues that Corporal Pantoja's testimony was inadmissible under Rule 403 because it was needlessly cumulative of other evidence. Under Rule 403, a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative

evidence." TEX. R. EVID. 403.  Although the testimony may have been cumulative of Luate's testimony and the dash-cam video, we cannot hold that it was needlessly cumulative or that the probative value of the complained-of testimony was substantially outweighed by its cumulative nature.  We note that the audio on the dash-cam video is not of great quality and is, at times, hard to understand. Furthermore, one of the issues at trial related to how much damage Appellant caused that night to Luate's car.  One of the defensive theories at trial focused on Luate's failure to mention all of the alleged damage in his statements to the police.  The trial court did not abuse its discretion when it overruled Appellant's Rule 403 objection. We overrule Appellant's fourth issue.

*Instructions on Parole and Good Conduct Time*

In her fifth issue, Appellant argues that she suffered egregious harm from the trial court's charge to the jury at the punishment phase of trial because the charge improperly instructed the jury that Appellant would be eligible for parole and good conduct time for her criminal mischief conviction, which was a state jail felony.  The record reflects that the charge of the court, at the punishment phase of Appellant's trial, contained instructions regarding parole and good conduct time.  *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 4(c) (West Supp. 2017).  At the charge conference, Appellant informed the trial court that she had no objection to the jury charge.

Appellate standards of review for claims of jury charge error are well settled. We must first decide whether error exists in the charge.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).  If error exists, we must determine whether the error caused sufficient harm to warrant reversal.  *Id.* at 743–44.  When, as in this case, the error was not objected to, reversal is proper only if the error caused actual, egregious harm to the defendant.  *Id.*; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).  "An egregious harm determination must be based on a finding of actual rather than theoretical harm."  *Cosio v. State*, 353 S.W.3d 766, 777 (Tex.

Crim. App. 2011). Actual harm is established when the erroneous jury instruction affected the very basis of the case, deprived the defendant of a valuable right, or vitally affected a defensive theory. *Id.* (citing *Almanza*, 686 S.W.2d at 171). When assessing harm based on the particular facts of a case, we consider the entire jury charge; the state of the evidence, including contested issues and the weight of the probative evidence; the parties' arguments; and all other relevant information in the record. *Id.* Unobjected-to error in the court's charge regarding the defendant's eligibility for parole is subject to review under the "egregious harm" analysis set out in *Almanza*. *Igo v. State*, 210 S.W.3d 645, 646–47 (Tex. Crim. App. 2006).

Here, the State concedes that it was error to include the complained-of instructions "for the state jail" conviction. *See Rogers v. State*, 432 S.W.3d 916, 917 n.1 (Tex. App.—Texarkana 2014, no pet.) (noting that persons convicted of state jail felonies have, historically, not been eligible for parole and good conduct time). However, with respect to Appellant's conviction for evading arrest or detention with a vehicle, instructions on parole and good conduct time were mandatory because that offense was a third-degree felony. *See* CRIM. PROC. art. 37.07, § 4(c) (providing that the trial court "shall" include the specific instructions set out in that statute). Because the instructions were mandatory, their inclusion in the jury charge, in general, was not error. *See id.*; *Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). We note that the trial court did not separate the instructions for the two convictions in its charge on punishment. The charge contains a generic paragraph, then a paragraph that sets out the punishment available for the criminal mischief conviction, then a paragraph that sets out the punishment available for the evading arrest conviction, followed by more than two pages of additional instructions, including the complained-of instructions regarding parole and good conduct time. Assuming that

13

it may have been error not to give separate instructions[2] for Appellant's convictions, we will address the matter of harm.

We conclude that Appellant did not suffer egregious harm from the trial court's instructions on parole and good conduct time. Neither the State nor Appellant made any reference to parole eligibility during closing arguments. Although the trial court did not separate the punishment instructions for each conviction, it also did not give any instruction that specifically stated that parole and good conduct time were applicable to the state jail felony. The charge also contained the following instructions:

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if she is sentenced to a term of imprisonment . . . .

> . . . [Y]ou are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular Defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant. Such matters come within the exclusive jurisdiction of the Pardon and Parole Division of the Texas Department of Criminal Justice and the Governor of Texas.

These instructions were mitigating and curative because they informed the jury that the effect of parole law and good conduct time cannot be predicted. Further, the jury was explicitly instructed that, although it could consider generally the existence of parole and good conduct time, it could not apply that to Appellant specifically. *See Igo*, 210 S.W.3d at 647 (parole instruction that contained standard curative language admonishing jury not to consider extent to which parole law might be applied to defendant was factor mitigating against finding of egregious harm). We presume that the jurors understood and followed these instructions absent

---

[2]We note that the legislature has not mandated that a jury be instructed regarding the unavailability of parole and good conduct time for persons convicted of state jail felonies. *Best v. State*, 118 S.W.3d 857, 866 (Tex. App.—Fort Worth 2003, no pet.).

evidence to the contrary. *Luquis*, 72 S.W.3d at 366. There is no evidence in the record to rebut the presumption that the jury followed the instruction not to consider how good conduct time or parole law might be applied to Appellant. Accordingly, we cannot conclude that the complained-of error affected the very basis of the case, deprived Appellant of a valuable right, or vitally affected a defensive theory. *McGee v. State*, No. 11-13-00124-CR, 2015 WL 3799362, at *6–7 (Tex. App.—Eastland June 11, 2015, no pet.) (mem. op., not designated for publication). The record does not show that the instructions on parole and good conduct time egregiously harmed Appellant. *See Igo*, 210 S.W.3d at 646; *McGee*, 2015 WL 3799362, at *7; *see also Luquis*, 72 S.W.3d at 365–68 (no due process violation). We overrule Appellant's fifth issue.

Appellant's sixth issue is related to her fifth issue. She argues that she received ineffective assistance of counsel at trial because her attorney did not timely object to the inclusion of the instructions on parole and good conduct time in the punishment charge. To establish that her trial counsel rendered ineffective assistance, Appellant must show (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that the result would have been different but for counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Perez v. State*, 310 S.W.3d 890, 892–93 (Tex. Crim. App. 2010). For the same reasons set out above in this court's discussion of egregious harm, we hold that Appellant has failed to meet the second prong of *Strickland*. Appellant has not shown that the result of the proceeding below would have been different but for trial counsel's errors. *See Hunt v. State*, No. 05-16-00558-CR, 2017 WL 3276007, at *7–9 (Tex. App.—Dallas Aug. 1, 2017, no pet.) (mem. op., not designated for publication). We overrule Appellant's sixth issue.

*This Court's Ruling*

We affirm the judgments of the trial court.


JOHN M. BAILEY

JUSTICE


August 30, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, J.;
Gray, C.J., 10th Court of Appeals[3];
and Wright, S.C.J.[4]

Willson, J., not participating.

---

[3]Tom Gray, Chief Justice, Court of Appeals, 10th District of Texas at Waco, sitting by assignment to the 11th Court of Appeals.

[4]Jim R. Wright, Senior Chief Justice (retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.