

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00211-CR

---

PEDRO PETE QUEZADA SOLIZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 286th District Court
Cochran County, Texas
Trial Court No. 22-07-1728, Honorable Pat Phelan, Presiding

---

January 30, 2024

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Following pleas of not guilty, Appellant, Pedro Pete Quezada Soliz, was convicted by a jury of terroristic threat against a public servant, the judge of the Cochran County Court (Count I),[1] and criminal mischief of $2,500 or more but less than $30,000 (Count II).[2] Punishment was assessed by the jury at twenty-four months in a state jail facility plus

---

[1] TEX. PENAL CODE ANN. § 22.07(a)(2), (c), (c-1). The offense is elevated to a state jail felony when committed against a person the actor knows is a judge.

[2] TEX. PENAL CODE ANN. § 28.03(a)(1), (b)(4)(A).

a $10,000 fine for terroristic threat and also at twenty-four months in a state jail facility plus a $5,000 fine for criminal mischief. The sentences were ordered to run concurrently. By two issues, Appellant challenges the trial court's denial of his motions for instructed verdict as to each count—essentially challenges to the sufficiency of the evidence. We modify and affirm as to Count I and reverse and remand as to Count II.

## BACKGROUND

Appellant and the judge are second cousins. The judge and his son live on different streets but there is only one house between them. The judge's son and his family had recently moved into a house which had been in the judge's family.

On an evening in November 2021, the neighbor who lives in the house between the judge's house and his son's house called the judge's son to alert him an individual was outside yelling and threatening to kill the judge and his son. The neighbor testified he saw the individual hitting two trucks with a big stick. He also testified Appellant and his family used to live in the house across the street which was now abandoned.

The judge was at a friend's house at the time of the incident. After the neighbor's phone call, the judge's son looked out the window and saw an individual "fighting the air" "almost wrestling with a shadow" and heard him shouting profanities and death threats. He locked his doors and called his father and 911.

A deputy responded to the disturbance and shined his spotlight on Appellant who was walking toward the abandoned house. Appellant was ordered to stop and complied. The deputy determined Appellant was under the influence. According to the deputy,

2

Appellant was "yelling because the judge was watching [Appellant's] niece through a magnifying glass." He shouted "get off of her" several times.[3]

After he received a call from his son, the judge immediately drove to his son's house but neither the suspect nor the responding deputy was present. The deputy later returned to the scene on a criminal mischief complaint made by the judge.[4] However, the original responding deputy was dispatched to another call and another deputy later reported to the property to collect evidence and take photographs. A 2000 GMC truck, which belonged to the judge, was parked underneath a carport adjacent to his property. The deputy observed deep, jagged scratches from the front panel to the taillights, as well as dents and freshly removed paint. The windshield was shattered by what appeared to be concrete or rock. A 2004 GMC parked in the judge's son's driveway also sustained damage.

The judge, who insured both trucks, filed an insurance claim on each truck. There was no dispute the judge owned the 2000 GMC. However, title to the 2004 GMC was in the judge's brother's name. The judge explained he had purchased the 2004 GMC from his brother for his son to use in college and had made payments on it until recently; title, however, had not yet been transferred to the son. During cross-examination and redirect examination, the judge clearly stated his intention to gift the 2004 GMC to his son "from the get go."

---

[3] The record shows the niece was safely in her home.

[4] The judge also requested a criminal trespass notice be issued to Appellant.

The insurance claims specialist testified that after applicable deductibles, a check for $1,304.84 was issued to the judge and his wife for the 2000 GMC and a check for $1,987.45 was issued to the judge's brother for the 2004 GMC. Evidence showed the checks were deposited into two different bank accounts.

After the State rested, Appellant moved for a directed verdict on Count I alleging there was no proof he knew the victim was a judge or that he made a threat with intent to place the judge in fear of imminent serious bodily injury. He also moved for a directed verdict on Count II asserting the evidence was insufficient to show a pecuniary loss of $2,500 because the 2004 GMC was intended as a gift to his son but was still titled in the judge's brother's name. The trial court denied both motions. Thereafter, Appellant also rested.[5] The jury returned verdicts of guilty on both counts.

## STANDARD OF REVIEW—SUFFICIENCY OF THE EVIDENCE

The only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any

---

[5] During trial but outside the jury's presence, the prosecutor requested to discuss certain arrest warrants for Appellant as a motive for threatening the judge and to show Appellant knew the victim was a judge. The trial court denied the request. After both sides rested and closed, the State made an offer of proof regarding a business records affidavit and certain exhibits. Citing extraneous offenses, the trial court overruled the State's request.

rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

**ISSUE ONE—TERRORISTIC THREAT**

Appellant asserts the State failed to prove he placed the judge in fear of imminent serious bodily injury because the judge was not present when the threats were made and there was no evidence the threats were communicated to the judge by any electronic means.[6] We disagree.

Terroristic threat requires a person to threaten to commit any offense involving violence to any person with intent to place any person in fear of imminent serious bodily injury. TEX. PENAL CODE ANN. § 22.07(a)(2). The offense is elevated from a Class B to a Class A misdemeanor if the threatened person is a public servant and further elevated to a state jail felony if the offense is committed against a person the actor knows is a judge. *Id.* at § 22.07(c)(2), (c-1).

---

[6] On appeal, Appellant does not contest whether he knew the person he committed the offense against was a judge as he did in the trial court. He only challenges the element of placing a person in fear of imminent serious bodily injury.

5

The offense of terroristic threat is complete if the accused, by his threat, sought as a desired reaction to place the person in fear of imminent serious bodily injury. *Millsap v. State*, No. 07-16-00455-CR, 2017 Tex. App. LEXIS 12015, at *2–3 (Tex. App.—Amarillo Dec. 22, 2017, no pet.) (mem. op., not designated for publication) (citing *Heinert v. Wichita Falls Hous. Auth.*, 441 S.W.3d 810, 818 (Tex. App.—Amarillo 2014, no pet.)). The accused's threats of violence made with intent to place the victim in fear of imminent serious bodily injury is what constitutes the offense. *Cook v. State*, 940 S.W.2d 344, 347 (Tex. App.—Amarillo 1997, pet. ref'd). The statute does not require the victim or anyone else to be actually placed in fear of imminent serious bodily injury. *Id.* (citing *Dues v. State*, 634 S.W.2d 304, 306 (Tex. Crim. App. 1982)). It is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. *Dues*, 634 S.W.2d at 305. Also, "[i]t is of no consequence whether the [threat] was heard live . . . ." *Cook*, 940 S.W.2d at 349.

The fear of serious bodily injury need only be imminent, not immediate. *Millsap*, 2017 Tex. App. LEXIS 12015, at *3. "Imminent" means "near at hand; mediate rather than immediate." *Id.* Threatening to commit an act could cause fear of imminent serious bodily injury if the victim believed the act was "near at hand" or "hanging threateningly over one's head." *Id.* (citing *Jones v. State*, No. 07-16-00345-CR, 2017 Tex. App. LEXIS 4158, at *7 (Tex. App.—Amarillo May 8, 2017, no pet.) (mem. op., not designated for publication). Intent can be inferred from acts, words, and conduct of the accused. *Cook*, 940 S.W.2d at 347.

While Appellant concedes *Cook* is similar to the underlying facts, he distinguishes *Cook* by pointing out the defendant left three threatening voicemails whereas, here, he

6

did not make any electronic threats and his threats were inaudible due to the judge's absence at the time. Thus, he concludes any threats made to the judge were not imminent. We disagree with Appellant's assessment.

In *Cook*, the intended victim was out of town when the voicemails were made. 940 S.W.2d at 347. In the underlying case, the judge was not present when the threats to kill him were made. However, the threat to kill the intended victim and place him in fear of imminent serious bodily injury is what constituted the offense of terroristic threat regardless of whether the accused had the capability or intention to carry out the threat. *Id.* During his testimony, the judge answered affirmatively when asked if he was concerned and scared when his son called him about the death threats. When asked if he took the death threats seriously, he answered, "[y]es." He also confirmed that a death threat implicates serious bodily injury. He requested a criminal trespass notice as protection from Appellant's death threats. The judge's absence from the scene when Appellant threatened to kill him did not negate intent or imminence from serious bodily injury. When viewed in the light most favorable to the verdict, we conclude the evidence is sufficient to support the conviction for terroristic threat. Issue one is overruled.

**ISSUE TWO—CRIMINAL MISCHIEF**

Appellant contends the State failed to prove Appellant caused at least $2,500 in damages, the threshold for a state jail felony. His argument is based on the language in the indictment and the charge alleging Appellant caused damage to "*a* vehicle," i.e., *one*

truck, belonging to the judge.[7] (Emphasis added). We agree the State failed in its burden to prove the amount of pecuniary loss suffered for a state jail felony conviction but for a different reason.

A person commits criminal mischief if, without the effective consent of the owner, he intentionally or knowingly damages or destroys the tangible property of the owner. TEX. PENAL CODE ANN. § 28.03(a)(1). *See Rosario v. State*, No. 07-13-00098-CR, 2014 Tex. App. LEXIS 2652, at *3 (Tex. App.—Amarillo March 6, 2014, no pet.) (mem. op., not designated for publication). "Owner" is defined as "a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property . . . ." TEX. PENAL CODE ANN. § 1.07(a)(35)(A).

Appellant was charged with causing damages in the amount of $2,500 or more but less than $30,000, a state jail felony. § 28.03(b)(4)(A). The evidence showed that title to the 2004 GMC was in the judge's brother's name and had not yet been transferred to his son. The judge unequivocally testified he always intended the 2004 GMC to belong to his son "from the get go." Thus, because the son possessed the truck, drove the truck, and it was parked in the son's driveway, he had a greater right to possession. The judge could not be considered the owner for purposes of including the pecuniary loss to the 2004 GMC to elevate the offense to a state jail felony from a Class A misdemeanor, which only requires a pecuniary loss of $750 or more but less than $2,500. The damages proven beyond a reasonable doubt for criminal mischief to the judge's 2000 GMC were

---

[7] Under the Code Construction Act, "[t]he singular includes the plural and the plural includes the singular." *See* TEX. GOV'T CODE ANN. §§ 311.012(b); 312.003(b). *See also Hensley v. State*, 388 S.W.2d 424, 425 (Tex. Crim. App. 1965) (applying the singular/plural maxim to the construction of language in an indictment alleging use of "hands" when the evidence showed use of only one "hand").

$1,304.84 after the $500 deductible, well below the $2,500 required for a state jail felony conviction. We find the evidence is insufficient to support Appellant's conviction for state jail felony criminal mischief.

This Court's finding of insufficient evidence does not necessarily result in an acquittal. In *Bowen v. State*, 374 S.W.3d 427, 431–32 (Tex. Crim. App. 2012), the Court held that when an appellate court finds the evidence insufficient to support a conviction, it is not limited to an acquittal of that conviction. It may instead reform the judgment to reflect a conviction as to any lesser included offense established by the evidence and remand for a new punishment hearing. *Id.* To justify reforming a judgment the following two conditions must be met: (1) the jury necessarily found every element necessary to convict the accused of the lesser included offense when it convicted the accused of the reversed offense and (2) there is sufficient evidence to support a conviction for the lesser included offense. *Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014).[8]

Here, the jury necessarily found that Appellant, without the judge's effective consent, intentionally or knowingly damaged the 2000 GMC. However, because the damages to the 2004 GMC should not have been considered as the judge was not the owner, we find the evidence insufficient to support a conviction for criminal mischief classified as a state jail felony. Thus, reformation of that conviction from a state jail felony to a Class A misdemeanor is the appropriate remedy. Issue two is sustained.

---

[8] Misdemeanor criminal mischief is a lesser included offense of felony criminal mischief. *Holz v. State*, 320 S.W.3d 344, 345, 347 (Tex. Crim. App. 2010).

## REFORMATION OF JUDGMENT

In addition to reforming the judgment in Count II to reflect a Class A misdemeanor conviction, we direct the trial court to also reform the judgment in Count I to correct clerical errors. The summary portion of the judgment under "<u>Plea to Offense</u>" shows Appellant pleaded "guilty" to terroristic threat. The reporter's record, however, reveals Appellant entered a plea of "not guilty." Also, under "<u>Statute for Offense</u>," the judgment incorrectly reflects a conviction under section "22.07(e)." That subparagraph does not apply.

This Court has the power to modify a trial court's judgment to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Appellate courts have the power to reform whatever the trial court could have corrected by a judgment *nunc pro tunc* where the evidence necessary to correct the judgment appears in the record. *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). The power to reform a judgment is "not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529–30. Thus, we modify the summary portion of the trial court's judgment in Count I to reflect a plea of "not guilty" under "<u>Plea to Offense.</u>" We also modify the "<u>Statute for Offense</u>" portion to reflect section "22.07(c)(2), (c-1)." As modified, the judgment of conviction in Count I is affirmed.

Because we must reverse the conviction in Count II, we need not reform any clerical errors in the summary portion of that judgment.

10

**CONCLUSION**

As to Count I, we modify the summary portion of the judgment for terroristic threat to reflect a plea of "not guilty" and to reflect "22.07(c)(2), (c-1)" as the statute for offense; as modified the judgment is affirmed.

As to Count II, we reverse the trial court's judgment for criminal mischief and remand the cause to the trial court to reform the judgment to reflect a conviction for the lesser included offense of criminal mischief classified as a Class A misdemeanor, and to further hold a punishment hearing associated with that degree of offense.

Alex Yarbrough<br>
Justice

Do not publish.

11